ELLIS, Judge.
This is a suit for personal injuries and property damage arising out of an automobile accident. Plaintiffs are Herbert J. McGrath, Jr. and Rosalie Agnes McGrath, his wife. Defendants are Industrial Piping Company, a division of Synalloy Corporation, and General Accident & Fire Assurance Corporation, Ltd., its insurer. The case was tried on its merits before a jury, and pursuant to its verdict, judgment was rendered in favor of Mr. McGrath for $7,500.00 and in favor of Mrs. McGrath for *1038 $25,000.00. From that judgment, defendants have appealed.
The accident happened on December 29, 1974, on Siegen Lane in East Baton Rouge Parish. Siegen Lane is a two lane, black top road, running north and south. Mr. McGrath’s car had a dead battery, and he needed a push to get it started. Mrs. McGrath, driving her car, was pushing him north on Siegen Lane. After one unsuccessful attempt, both cars were stopped in the northbound lane for about a minute, while Mr. and Mrs. McGrath conferred. She was preparing to push him off once again when her car was struck from the rear by a truck owned by Industrial and operated by its employee, Bobby Weaver. Both Mr. and Mrs. McGrath testified that, while stopped, the flashers on Mrs. McGrath’s car were operating.
Mr. Weaver testified that he was driving north on Siegen Lane at 40 or 45 miles per hour. He first saw the McGraths when they were one-half to three-quarters of a mile ahead of him. As he approached to within 10 car lengths he realized they were going slowly and slowed his truck to about 30 miles per hour. Then, when 35 or 40 feet from Mrs. McGrath, he saw that she was stopped, and applied his brakes. His truck skidded into the rear of Mrs. McGrath’s car. He testified that he saw no lights on the rear of her car.. He also stated that the surface of the road was wet because of a rain that had fallen between one to two and one-half hours before. Mr. McGrath had testified that there had been a light rain three hours before the accident, but that the road was completely dry.
Defendants’ first specification of error is that the jury erred in not finding the plaintiffs contributorily negligent in two respects. First, it is claimed that they should not have attempted the dangerous maneuver of pushing one vehicle with another at a slow speed on a heavily travelled, high speed road. There is nothing negligent per se in pushing one vehicle with another on a highway. The only testimony in the case as to traffic conditions is that of Mr. McGrath, who stated that at the time of the accident traffic on Siegen Lane was very sparse. We find no merit in this argument.
Second, it is claimed that plaintiffs violated R.S. 32:141, which provides:
“A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park, or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
“B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.”
We think that Mr. and Mrs. McGrath fall within the provisions of Subsection B. supra. Mr. McGrath’s car was temporarily disabled. They were stopped in the highway for a minute or less, and Mrs. McGrath was preparing to move on when the accident happened. We assume that the jury believed that Mrs. McGrath’s flashers were in operation, since such a finding of fact is necessary to the conclusion that Mrs. McGrath protected traffic within the meaning of R.S. 32:141(B).
We are of the opinion that there is no manifest error in the jury’s finding of liability, and that the sole cause of the accident was Mr. Weaver’s very evident negligence in failing to see what he should have seen.
The next specification of error is that the jury abused its discretion in award *1039 ing Mrs. McGrath $25,000.00 for her injuries. The record shows that in the accident Mrs. McGrath was knocked unconscious for a short time. She was taken to Doctors Memorial Hospital, where she was seen by Dr. Thomas Campanella, an orthopedist. She was complaining of pain in the neck, radiating down into the shoulders and lower back, particularly on the left side. He found muscle spasm in her neck and low back.
X-rays of her skull and neck proved negative, and Dr. Campanella permitted her to return home. He gave her pain medicine and muscle relaxants. The next day, he saw her again and prescribed a cervical collar.
On January 6, 1975, Mrs. McGrath was complaining of pain down her back, between her shoulder blades, particularly on the left side. She was suffering also from nausea and headaches, particularly at the base of her skull.
Apparently Mrs. McGrath improved somewhat, since she attempted to return to work as a private duty licensed practical nurse in April, 1975. She found that she was unable to do the lifting and other heavy work required thereby. Her symptoms became more severe.
She saw Dr. Campanella on May 8, 1975, when she was still having the same trouble. She was wearing the collar to the extent that it was rubbing soreness under her chin. Dr. Campanella suggested that she start taking off the collar occasionally, and continued her medication.
On July 10, 1975, she was having pain on top of her head, felt that her left ear was stopped up, and was complaining of headaches. Dr. Campanella prescribed cervical traction three or four times per day and continued her on medication.
On September 30, 1975, he prescribed physical therapy. He continued to see her periodically until April 13, 1976, shortly before the trial which took place on May 17, 1976. At that time, she still had soreness on the left side of her neck, tenderness over the left scapular nerve, and suffered from headaches.
Dr. Campanella found no evidence of nerve root irritation or disc involvement. He felt that her complaints were related to soft tissue injury, and was of the opinion that such injuries usually are resolved within two years.
Mrs. McGrath testified that she had been in severe pain since the accident, and that she was unable to work as a practical nurse, that she was unable to do all of her house work without help. She was unable to pick up her two year old son, and, according to Mr. McGrath, was subject to spells of depression because of her physical condition.
For two years’ pain and disability the jury awarded $25,000.00 which, although high, we believe to be within the bounds of the discretion accorded them by law.
Defendant also complains that the special damages of $7,500.00 awarded to Mr. McGrath is too high. Medical expenses of $728.63 were proved and the damages to Mrs. McGrath’s car were stipulated to be $522.60. Dr. Campanella testified that he would probably have charges of about $60.00 for future visits with Mrs. McGrath, and that she might need more therapy. These amounts total $1,311.23.
Although Mrs. McGrath was not working at the time of the accident, she and Mr. McGrath testified that she had intended to begin working as a licensed practical nurse in February, 1975, when their baby became two years old. She attempted to go back to work in April, 1975, and continued to work at a decreasing pace until September, 1975, when she was forced to stop. At that time, she was earning $3.00 per hour, and she and Mr. McGrath testified that there was enough work available to her to be employed full time. As of the time of trial, Mr. McGrath testified that she had lost $4,114.00. He did not compute wages which might be lost in the future during the remainder of her two year disability.
Defendants contend that this evidence is not legally sufficient to sustain an award for lost wages, that there should have been *1040 some further corroboration. Since the testimony is informed and not unreasonable and since Mrs. McGrath obviously made a good faith effort to work and was unable to do so because of the injuries suffered in the accident, we think there is no manifest error committed in making some award for this item. Excluding the specifically proved special damages, an award of over $6,000.00 was made. Since the lost wages from September, 1975, until May 17, 1976, were testified to be $4,114.00, and since another $4,000.00 would have been earned by a full time practical nurse by the end of December, 1976, we do not find that the jury exceeded its discretion in making the award.
The judgment appealed from is therefore affirmed, at defendants’ cost.
AFFIRMED.