399 So.2d 712 (1981)
Michael LOCICERO et al.
v.
STATE FARM MUTUAL INSURANCE CO., et al.
No. 14178.
Court of Appeal of Louisiana, First Circuit.
May 26, 1981.
*713 Hobart O. Pardue, Jr., Springfield, and Phillip T. Hager, New Orleans, for plaintiffs.
Iddo Pittman, Jr., Hammond, for defendants.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
Plaintiff, Michael Locicero, filed this action seeking monetary damages for personal injuries from an automobile accident. Plaintiff was a seventeen year old minor at the time of the accident. His father, Andrew Locicero, joined in the suit seeking recovery of medical expenses incurred by him on behalf of his son. They named as defendants the father of the minor driver of the offending vehicle and his insurer, State Farm Mutual Insurance Company.
The liability of defendants was stipulated, and the case was tried on the issue of damages. The trial court awarded Michael Locicero $65,000.00 as general damages; personal injury and disability$40,000.00, physical pain and suffering$10,000.00, and mental anguish$15,000.00. State Farm appeals.
On appeal, State Farm argues that the general damage award is excessive, that it represents speculative damages, and that the trial court failed to consider guideline cases in fixing the award.
The automobile accident giving rise to this action occurred on June 16, 1978. Michael Locicero was a passenger in the rear seat of a vehicle when it was hit head-on by another automobile. The impact threw Michael against the rear of the front seat and then over it and into the front dashboard. His left forearm was broken in two places at mid-shaft. Bone protruded through the skin, and his wrist and hand hung limp against his arm in a backward position. Michael was not immediately rendered unconscious. Eventually, he passed out upon viewing his injury.
Michael was taken to a hospital emergency room, where he was examined by Dr. John L. Fambrough, an orthopedic surgeon. Dr. Fambrough diagnosed Michael's major injury as compound fractures of both the radius and ulna at the mid-shaft of the left forearm. Other injuries were superficial.
Surgery was performed immediately and lasted six hours. Both fractures were set with metal plates, attached with screws into the bone. A long-arm cast was applied. After six days in the hospital, during which Michael experienced considerable pain and other discomfort, he was discharged.
Over the following year, Dr. Fambrough examined Michael on several occasions. Five weeks after surgery, the cast was removed. The fractures were healing without complication, but Michael's complaints of pain and numbness led Dr. Fambrough to suspect ulna nerve damage. He referred Michael to a neurologist, Dr. Evan P. Howell, whose findings will be discussed at a later point.
On May 15, 1979, Michael was again hospitalized for the surgical removal of the metal plates and screws. Dr. Fambrough again applied a cast, in order to allow "the screwholes to fill in with bone." The cast was removed on July 21, 1979. However, the screwholes had not yet healed completely and a wrist immobilizer was applied.
Dr. Fambrough again referred Michael to Dr. Howell because of continued post-operative *714 complaints of pain and numbness. Dr. Fambrough also prescribed physical therapy and instructed Michael to avoid strenuous activity for four months. The only permanent effects of the surgery are two scars on the forearm.
Dr. Howell first examined Michael on September 11, 1978. He performed electrical studies and diagnosed Michael's condition as ulnar nerve damage causing absent nerve function in the left hand and lower fingers.
On October 30, 1978, Dr. Howell performed a formal neurological examination of Michael. He opined that there was no doubt that Michael had a significant ulnar nerve lesion. He noted also weakness and atrophy in the muscles of the left hand and that his patient complained of pain, numbness, and weakness.
By November of 1978, Dr. Howell noted significant improvement in the ulnar nerve conduction velocity in the left forearm but no significant change with respect to the elbow area. He further noted that the first dorsal interosseus muscle showed evidence of severe denervation with complete lack of motor units without voluntary effort.
Michael's condition continued to improve gradually. On April 30, 1979, Dr. Howell noted significant evidence of the healing of the ulnar nerve. However, Michael returned to Dr. Howell on June 11, 1979, after the surgical removal of the metal plates and screws. He complained of swelling and decreased sensation of the fourth and fifth fingers of his left hand. He also complained of sharp pains down his left forearm and into the lower fingers, the same path as that of the ulnar nerve.
On his last visit to Dr. Howell, on January 7, 1980, Michael still complained of the shooting pain down the arm and also of numbness of the lower fingers. Michael also complained that use of the arm tended to increase the pain and cause swelling. Upon testing, Dr. Howell found improvement of the ulnar nerve conduction velocity in the forearm area but found further delay and decrease of that across the elbow. He also found a three-quarter inch difference between the lengths of Michael's left and right forearm, which, he stated, was due to a loss of muscle bulk.
Dr. Howell explained that Michael needed physical therapy for the atrophy problem but that exercise could aggravate the nerve damage and cause more pain. He stated that Michael would continue to experience problems upon repetitive activity and that future surgery was a possibility.
Dr. Howell opined that Michael's complaint of numbness was compatible with the results of medical tests. He also stated that some pain, although not severe pain, is also symptomatic of similar conditions. Finally, Dr. Howell opined that Michael's condition was aggravated by his reluctance to use the arm for fear of further injury.
The record reveals that Michael was a very active and talented athlete prior to the automobile accident. He played football in high school and planned to compete for a position on a college team. After the accident, sport participation was an impossibility. Even after the fractures healed, Michael remained relatively inactive and experienced considerable discomfort. He was reluctant to use his injured arm for fear of further injury. There is no doubt that the injury to his arm has had a great effect upon Michael's lifestyle.
Appellant, State Farm, specifically argues that the effect of the injury upon Michael's lifestyle and the resultant deprivation of even an opportunity to compete for a college football position are too speculative to be considered in assessing damages. We disagree.
This case does not involve assessment of loss of future wages, as do two cases cited as authority by State Farm. See Watson v. Hartford Accident & Indemnity Company, 339 So.2d 480 (La.App. 2nd Cir. 1976), writ denied, 341 So.2d 1124 (La. 1977); Reeves v. Gulf States Utilities Co., 327 So.2d 671 (La.App. 1st Cir. 1976), writ denied, 330 So.2d 311 (La.1976). Nor does it involve speculation upon damages which have not yet arisen, as in another case cited *715 as authority by State Farm. See Ulmer v. Travelers Insurance Company, 156 So.2d 98 (La.App. 1st Cir. 1963). Rather, in the instant case, the record shows that plaintiff's lifestyle was detrimentally altered and that he was forced to forego various activities, including participation in try-outs for a college football team. Loss of social and recreational activities may properly be considered as one factor in setting an award of general damages. See e. g. Landon v. Hartford Accident & Indemnity Company, 339 So.2d 1307 (La.App. 1st Cir. 1976).
State Farm also argues that the general damage award is excessive and that it is not comparable to awards in cases of similar injuries.
With respect to the award of general damages, each case must be weighed and evaluated according to its own particular facts and circumstances. In Reck v. Stevens, 373 So.2d 498, 501 (La.1979), the Louisiana Supreme Court stated:
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.

* * * * * *
"Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of facts's `much discretion,' La.Civ.C. art. 1934 (3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco [Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977)] for purposes of then determining what would be an appropriate award for the present case.
"In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) `similar' injuries, see Coco at 341 So.2d 334." (footnote omitted)
In the instant case, Michael Locicero, an active boy of seventeen years, received a severe injury to his left arm. He lost consciousness only upon viewing his injury. Michael was twice hospitalized for surgery and suffered pain, weakness, and numbness for well over a year. His lifestyle was seriously disrupted. Permanent effects of the injury include two surgical scars and reduced strength in his arm and hand upon repetitive activity. Moreover, Michael's reluctance to use his arm for fear of re-injury complicates his full recovery.
Considering all of the facts and circumstances, we do not find that the award made, albeit on the high side, is so high as to shock our consciences, Hanzy v. Sam, 385 So.2d 355 (La.App. 1st Cir. 1980), writ denied, 386 So.2d 357 (La.1980) sufficient enough for this court to declare that the trial judge abused his discretion.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be borne by the appellant, State Farm.
AFFIRMED.