449 So.2d 167 (1984)
Melvin Jean BALDWIN
v.
SCHWEGMANN GIANT SUPER MARKETS, INC.
No. CA-1406.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 1984.
Writ Denied June 1, 1984.
Ralph S. Johnson, New Orleans, for defendant-appellant Schwegmann Giant Super Markets, Inc.
*168 J. Paul Demarest, Favret, Favret, Demarest & Russo, New Orleans, for plaintiff-appellee Melvin Jean Baldwin.
Before WARD, CIACCIO and LOBRANO, JJ.
WARD, Judge.
Melvin Jean Baldwin sued Schwegmann Giant Super Markets, Inc. for damages sustained when she slipped and fell when entering Schwegmann's store. After trial before the bench, the Trial Judge found Ms. Baldwin's injury was caused 70% by the negligence of Schwegmann and 30% by her own negligence, and he awarded Ms. Baldwin $15,498.05 for:

Lost Wages $ 2,780.80
Medical Expenses $ 718.05
General Damages $12,000.00

Both parties appeal the judgment. Schwegmann contends it exercised reasonable care to protect its customers from injury and that the Trial Judge erred in finding it negligent. Ms. Baldwin appeals the 30% reduction in her damage award, asserting that there is no evidence that she was negligent. She also contends that the award for lost wages and for general damages is inadequate and seeks an increase.
The record shows that on Saturday, July 31, 1982, at approximately ten o'clock in the morning, Ms. Baldwin went to the Schwegmann's store on the Westbank Expressway near her home in Harvey. It had been raining for quite some time. Holding her closed umbrella to her left side, Ms. Baldwin walked through the door into the store. As she stepped from the door mat onto the wet floor, she fell onto her right side, injuring her head, right shoulder, and arm. Schwegmann employees came to Ms. Baldwin's aid and helped her to a back room in the store. Her mother was called and immediately took her to West Jefferson Hospital.
Ms. Baldwin first consulted Dr. Mark Juneau, an orthopedic surgeon, the following Tuesday. He diagnosed her injury as a break in the right humerus near the shoulder joint. Ms. Baldwin's arm was immobilized in a sling for three weeks, after which the arm gradually regained its strength and full range of motion. Dr. Juneau discharged Ms. Baldwin from his care on October 27, 1982. He testified that she had no permanent disability, but she did consult him once in December of 1982, complaining of continuing aching pain in her arm.

NEGLIGENCE
A storekeeper in Louisiana owes a duty of reasonable care to those who come on his premises. While Schwegmann is not the insurer of the safety of its customers and need not keep its floors and entranceways in perfect condition, it must exercise ordinary care and prudence to provide reasonably safe conditions. In rainy weather, a standard of reasonable care may require extraordinary precautionary measures, including warnings to customers and continuous inspection and cleanup procedures to prevent dangerous accumulations of water near entranceways.
When a store's customer steps in a foreign substance, causing her to slip and fall and injure herself, a presumption arises that the store has breached its duty of reasonable care. The evidentiary burden shifts to the defendant to exculpate itself from the presumption that it was negligent. Kavlich v. Kramer, 315 So.2d 282 (La.1975); Smith v. Winn-Dixie Stores of Louisiana, Inc., 389 So.2d 900 (La.App. 4th Cir.1980).
The Trial Judge concluded, and we agree, that Ms. Baldwin made the necessary showing to shift the burden to Schwegmann to exculpate itself when she proved there was some water on the floor where she fell. She proved it was a busy Saturday morning at the supermarket and people were tracking rain water into the store and entering carrying dripping umbrellas. She testified that after she was helped up from the spot where she had fallen her dress was wet from water on the floor. The Trial Judge found, and Schwegmann does not dispute, that the water on *169 the floor caused Ms. Baldwin to slip and fall.
Nonetheless, Schwegmann contends that it rebutted the presumption of negligence by showing that it exercised reasonable care in protecting its customers from the dangers of slippery floors due to tracked-in rain water:
1. Schwegmann's employees placed mats inside the doors where customers entered the store.
2. A porter was stationed beside the doors and mopped up the water after customers entered. He testified that he had mopped the area where Ms. Baldwin fell immediately before the accident.
3. Schwegmann's employees were taping sheets of cardboard onto the floor in the entrance area to absorb excess water when Ms. Baldwin entered, although cardboard had not yet been placed on the spot where she fell.
Schwegmann contends that these precautions were adequate and reasonable under the circumstances and to require more would impose an unreasonable standard of care, making it, in effect, the insurer of its customers' safety.
The Trial Judge gave no written reasons for his judgment concluding Schwegmann was negligent to the extent of 70% of Ms. Baldwin's damages and that she was 30% at fault. We assume that the Trial Judge found that Schwegmann did not exculpate itself from liability because it might have taken additional precautions and that Ms. Baldwin did not exercise sufficient care for her own safety under the circumstances. We do not find the judgment of the Trial Court to be manifestly erroneous.

DAMAGES
Ms. Baldwin contends that, aside from the 30% reduction, the amount of damages awarded by the Trial Court is inadequate compensation.
As to lost wages, the record reveals at the time of her accident Ms. Baldwin was employed as a sitter by the daughter of an elderly bedridden woman. Her broken arm made it impossible for Ms. Baldwin to perform her duties adequately, and a replacement sitter was hired during her period of disability. Her employer testified that the only reason that Ms. Baldwin was not rehired was because by the time Ms. Baldwin had regained the use of her arm, the patient had become accustomed to the replacement sitter, and it seemed best not to make another upsetting change in the patient's routine.
Ms. Baldwin was paid an hourly wage and often worked twelve hour shifts or seven-day weeks. At the time of the accident, she was earning $221.00 per week.
Her treating physician testified that Ms. Baldwin was physically able to resume working by the end of October and perhaps earlier. The Trial Judge's award of $2,780.80 for lost wages compensates her for the maximum term of her disability, three months at $221.00 per week. We find this award supported by the evidence.
We must review the $12,000.00 award for general damages in light of the individual facts and circumstances of the case. Reck v. Stevens, 373 So.2d 498 (La. 1979). The record indicates that Ms. Baldwin sustained no permanent impairment of function of her arm, but may have occasional pain. During the period of her convelescence, she experienced some pain and discomfort and was partially dependent upon her family and friends for her personal care.
Considering this evidence, we find no abuse of discretion by the Trial Judge in the amount he awarded for general damages.
Accordingly, the judgment is affirmed.
AFFIRMED.