463 So.2d 833 (1985)
Betty Ann JACKS, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE CO., et al., Defendants-Appellants.
No. 16645-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1985.
Writ Denied April 1, 1985.
*835 Brown, Williams & Tucker by J. Waddy Tucker, Shreveport, for plaintiff-appellant, Betty Ann Jacks.
Nelson & Achee Ltd. by Roland J. Achee, Shreveport, for defendant-appellant, Allstate Ins. Co.
Rountree & Hicks by Gordon E. Rountree, Shreveport, for defendant-appellee Sec. Nat. Ins. and Leman L. Williams.
Bodenheimer, Jones, Klotz & Simmons by James P. Bodenheimer and G.M. Bodenheimer, Shreveport, for defendant-appellees, David Thompson and United Services Auto. Ass'n.
Before HALL, FRED W. JONES, Jr., SEXTON, NORRIS and PRICE, JJ.
NORRIS, Judge.
This is an appeal by the plaintiff in a personal injury case.[1] After a three-day judge trial, she was awarded $35,000 for her pain, suffering and permanent partial disability, $3,106[2] for loss of earnings, and other sums for her medical expenses. She contends on appeal that these sums are inadequate, but her chief argument is that the trial court erred in failing to find any negligence on the part of one of the defendants, David Thompson. Her appeal is directed only to Thompson and his insurer and, although she advances three separate arguments, the appellees have seriously argued only the negligence issue. For the reasons expressed, we reverse the lower court ruling on Thompson's negligence, amend the judgment to include Thompson and his insurer, amend and correct the lost earnings award, and otherwise affirm.

The accident.
The accident occurred shortly after midnight on May 19, 1982. Plaintiff, Betty Ann Jacks, is a woman in her forties and the mother of two teenaged girls. She spent the evening of May 18 at the Red Coach Lounge in Shreveport. She had been invited there by her friend, Jo Anne Turley, who was the bartender. During the course of the evening, from about 6:30 til she left, around 11:30, plaintiff drank two, or "possibly" three mixed drinks from the bar, and ate a sandwich. Plaintiff did not have a car that evening and she had "tentatively" arranged for Ms. Turley to drive her home after closing time.
At about 11:30, however, plaintiff decided she "needed" to leave earlier. She got a ride with defendant Charles Slough. Slough was a regular patron at the Red Coach and a friend of Ms. Turley's, but only an acquaintance to plaintiff. Slough had come to the bar earlier in the evening, left, and returned between 10:30 and 11:00. He testified that during his first stop at the bar, he had one beer; that when he left, he went home and had another beer, which he finished in his car on the return drive to the bar; and that back at the bar, he had one more beer, for a total of three that evening. This testimony was perhaps impeached on cross examination by introduction of a prior statement to an insurance adjuster in which he seemed to say he might have drunk more. Mr. Slough denied this inference and said that he had lately quit drinking altogether. Nevertheless he and plaintiff left the bar shortly *836 before midnight. Slough was driving his 1978 Ford LTD and plaintiff, in the front passenger seat, had to tell him the best route to her apartment.
Meanwhile, defendant Leman Williams had got off work from Sansone's Restaurant, where he was head chef. He was due at the Western Electric plant commissary at 6:00 a.m., where he held a second job. On his way home that evening, he stopped at the self-serve Gulf station at the corner of Youree and Southfield Drive. His car was a dark green 1973 Ford Torino. He pumped gas, paid, and returned to his car, only to find it would not start. He assumed the battery was dead.
At about the same time, defendant David Thompson had pulled into the Gulf station in his pickup truck. He was seventeen years old at the time, had just got off work from a fast-food restaurant, and was wearing brown pants and a black tee shirt. He did not know Williams, but when Williams asked him for a start, he got some jumper cables from the truck and linked them from Williams's battery to his. This was unsuccessful, so Thompson suggested a push start. Williams agreed and positioned himself by the open driver's door, with one hand on the steering wheel and the other on the car frame. Thompson assumed the heavy task of pushing the Torino directly from behind. In this manner they pushed the car off the Gulf lot and onto Southfield. Williams alone steered the car; Thompson merely pushed.
Once on Southfield, both Williams and Thompson noticed their signal at the intersection of Youree was green. Instead of taking the car straight through the intersection, Williams decided to make a right turn onto Youree. He hopped into the driver's seat to negotiate the turn; Thompson continued pushing and was by then providing the car's only motive force. He pushed a very short distance on Youree when his legs began to cramp. Thompson stopped pushing and jogged up alongside Williams's door to ask him why he had not engaged the ignition. At approximately that instant, Williams was rammed from behind by Slough's car, causing the plaintiff's injuries.
There were some minor inconsistencies in the testimony about the accident. Both Williams and Thompson are sure their light was green when they made the right turn, but Slough is also sure the light was green for him when he went through the intersection only a few seconds later. Slough does seem to remember the light changing to green, but he is not sure when or where he noticed this. Similarly, Mr. Slough remembered neither the landmarks along Youree Drive nor the conversation with plaintiff during the drive. Williams admits he saw Slough's car coming, but only after he had already turned onto Youree; Thompson claims he did not see Slough's car until the impact occurred; and Slough says he did not see Williams's car turning onto Youree, although he did see the car when it was too late to stop. Williams claimed he did not hear Slough's brakes squeal, but there were skid marks fifty-three feet long, and Thompson heard the squeal. Finally, when Thompson quit pushing, Williams says he applied his brakes, even though he saw Slough in the rear-view mirror, speeding toward him; and Slough insists he never saw any brake lights on Williams's Torino.
Most of the evidence, however, is not disputed. Williams's car was dark green and he had not turned on its lights or hazards. Thompson was wearing dark clothes. All witnesses agreed the area was exceptionally well lit, the pavement dry, the visibility good. Neither Williams nor Thompson made any attempt to alert southbound cars to the potentially dangerous stalled vehicle, but by all accounts the amount of traffic out at that hour is minimal. The time of impact was only seconds after Williams's turn. Slough's car skidded fifty-three feet to the place of impact and stopped cold when it hit the Torino; Williams glided 219 feet before he was able to climb back into his seat and apply the brakes.
Because he was standing to the side, Thompson was not injured, though he was emotionally rattled. Williams and Slough *837 both sustained personal injuries which were fortunately not serious; both cars were damaged, and Williams's car was totalled. The trial court apportioned fault twenty percent to Slough, eighty percent to Williams, and none to Thompson.

The injury.
The real victim was plaintiff. The collision caught her completely unawares, as she was looking down at the time, trying to tend to a cigarette; she had no way to brace herself for the jolt as did Williams. She was thrown forward very suddenly and broke her right humerus or arm bone close to the shoulder. She suffered immediate pain and could not move the arm. An ambulance came to the scene but she refused to get out of the car. When she finally got out, she walked to the Citgo gas station on the southwest corner of Youree and Southfield and called Ms. Turley, who drove her to Schumpert Hospital. There plaintiff was examined, X-rayed, and anesthetized for surgery to set her broken arm. The doctors placed her arm in an immovable sling which was very uncomfortable. She could not use her right arm or hand and had trouble sleeping. She remained in the hospital for four days. Then on June 5 she had to return to the hospital for another surgery. It seems the bone was setting improperly, so the area had to be reopened, the fracture broken, the bone reset. This operation was painful, although it was performed under anesthesia.
Recovery was also painful. Plaintiff was instructed to perform "exercises" to the extent pain would allow. She made numerous trips to her physician, Dr. Etheridge, who noted varying degrees of recovery. Dr. Etheridge discharged her on October 12, 1982. Plaintiff had also complained of some neck problems since then, but Dr. Etheridge was of the opinion that her present neck pains were in no way related to the accident.
Dr. Etheridge estimated that plaintiff suffered a residual loss of 25% of shoulder mobility and 20% of total shoulder functions. She has a 7½ inch scar on her shoulder. She testified that she has difficulty doing certain things, such as working a calculator, zipping a zipper, or brushing her hair. She admitted, however, that these incapacities were a combination of physical inability and pain, and that Tylenol would relieve the pain. She also admitted she is able to do her daily chores with some "help."

Issues.
This accident spawned two lawsuits and several incidental actions, with pleadings that add up to 120 pages. Before trial, Slough and his liability insurer, Allstate, settled the liability claim for $10,000 with Jacks only. Allstate remained in the suit, however, as a defendant with respect to its underinsured motorist coverage on Slough's vehicle. Allstate also remained in the suit as a plaintiff to recover its medical payments to Jacks and property damage to Slough. Thus it joined in the appeal. There are, however, only three issues for review on appeal:
(1) Whether the trial court erred when it found David Thompson free of negligence or fault;
(2) Whether the trial court abused its discretion in awarding plaintiff only $35,000 general damages; and
(3) Whether the trial court abused its discretion in the award of lost earnings.

ARGUMENT NO. 1
In this argument plaintiff contends the trial court erred in failing to find David Thompson solidarily liable with Leman Williams for the latter's share of the damages. She contends, in essence, that the trial court committed manifest error in absolving Thompson of fault for his participation in the transaction. If Thompson is negligent, then he will be solidarily liable with Williams under LSA-C.C. Art. 2324, which provides:
He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.

*838 Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.
There is no real question of Williams's fault. His conduct breached a duty to protect against an unreasonable risk of foreseeable harm. Powers v. Nat'l Indem. Co., 350 So.2d 943 (La.App. 2d Cir.1977); Fairbanks v. Travelers Ins. Co., 232 So.2d 323 (La.App. 2d Cir.1970), writ denied 255 La. 1097, 234 So.2d 194 (1970); Traders & Gen'l Ins. Co. v. Robison, 289 So.2d 178 (La.App. 1st Cir.1973). He violated a regulation, La. DOTD Office of Highways Orders 1978, No. 44, and in so doing he created a risk that extended to plaintiff.
As for Thompson's fault, however, we cannot agree with the trial court's determination that he was free of fault. We are, of course, reluctant to disturb the trial court's factual findings and will do so only when they are clearly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Under the circumstances of this case, we conclude the trial court was clearly wrong in finding Thompson free of fault. Rather, his conduct fell below the minimum standards established by law for the protection of others against unreasonable risk or harm. LSA-C.C. Arts. 2315 and 2316 provide:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it....
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Criteria for determining whether the legal duty exists under given circumstances were outlined in Straley v. Calongne Drayage & Storage, Inc., 346 So.2d 171 (La.1977):
... Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. In all cases, duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances...
 (346 So.2d at 176)
 [Citations omitted.]
See also Seals v. Morris, 410 So.2d 715 (La.1981); Craft v. Caldwell Parish Police Jury, 455 So.2d 1226 (La.App. 2d Cir.1984).
In the present case, we find Thompson was more than a simple motive force for Williams. He suggested a push of an unlighted, disabled vehicle from a place of safety. R.p. 273. He did not notice that Williams's car was unlighted. R.p. 304. Regardless of the abundance of street lighting or the sparseness of traffic, it was not reasonable for Thompson to think he could safely propel Williams's car down a major thoroughfare or highway. Nor is Thompson's negligence mitigated by Williams's unilateral decision to make the right turn onto Youree. It was negligent for Thompson to start pushing without first ascertaining the direction or plan for starting the car. Had Thompson merely asked, a moment's consideration might have shown them the improvidence of their scheme, and some other, safer, measures might have been taken.
The case of McGrath v. Industrial Piping Co., 340 So.2d 1037 (La.App. 1st Cir. 1976), cited by Thompson and his insurer in brief, is clearly distinguishable from the present situation. In McGrath, Mr. McGrath's car had become disabled on the highway and he called his wife for a push start. She arrived and proceeded to push him with her own car. Although the reported decision does not relate the time of day, it does say Mrs. McGrath was running her hazard lights. Plaintiffs stopped momentarily when defendant's employee struck them from behind. The court refused to find plaintiffs contributorily negligent, *839 holding, "there is nothing negligent per se in pushing one vehicle with another on a highway." 340 So.2d at 1038. The instant case is distinguishable for the obvious reason that neither Thompson nor Williams took the precautions that Mrs. McGrath took, in running her hazards. We also consider it significant that Williams's vehicle, unlike the McGraths', did not become disabled on the highway. Thus there was no real emergency. Furthermore, it was in a place of safety before they began pushing. Cf. Rowe v. Travelers Ins. Co., 253 La. 659, 219 So.2d 486 (1969).
Since the trial court's holding on this point is clearly wrong, we find David Thompson was guilty of personal fault. We accordingly will amend the judgment to cast Thompson with Williams solidarily for eighty percent of the damages.
There remains the further question of apportioning fault between Williams and Thompson. See LSA-C.C. art. 2103. This determination does not affect plaintiff's right of full enforcement against either solidary debtor. LSA-C.C. arts. 2324, 2088. Rather, it regulates the potential contribution between the debtors themselves after one has paid the entire debt. This is an integral part of the system of comparative negligence. See Wade, Comparative NegligenceIts Development in the United States and Its Present Status in Louisiana, 40 La.L.Rev. 299, 310 (1980).
We conclude that Leman Williams was more at fault in this case than David Thompson because Williams made the decision to turn onto the main traffic artery, failed to turn on his lights and failed to attempt to steer his disabled car off the road when he saw Slough's vehicle approaching. Thompson's negligence is limited to pushing the car from a place of safety and failing to warn other motorists of the danger. We therefore set Williams's fault at 60% and Thompson's at 20%. The judgment will be amended accordingly.

ARGUMENT NO. 2
In this argument plaintiff contends the trial court abused its discretion in awarding only $35,000 damages. Plaintiff has suggested that an award of $65,000 would be more appropriate, citing one case, Locicero v. State Farm Mut. Ins. Co., 399 So.2d 712 (La.App. 1st Cir.1981).
Our guidelines for approaching such an argument are laid out in Reck v. Stevens, 373 So.2d 498, 501 (La.1979):
Thus, the initial inquiry must always be directed at whether the trier [sic] court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much discretion", La. Civ. C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reasons, be considered either excessive, ... or insufficient ... Only after such determination of abuse has been reached, is a resort to prior awards appropriate ... for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in the determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries ...
 [Citations omitted.]
See also Coco v. Winston Industries Inc., 341 So.2d 332 (La.1976).
Our initial duty is to consider whether this plaintiff's injuries are worth so much more than the sum awarded as to amount to abuse of discretion. Plaintiff testified that before the accident, she had no pain. Upon impact, she experienced sudden pain and was unable to move her arm although she turned down an ambulance ride to the hospital. Plaintiff had a broken humerus that required immediate *840 attention. After the first surgery plaintiff's arm was fixed in a sling that made movement impossible. About two weeks later, she underwent another surgery to reset the bone which, according to Dr. Etheridge, was "not in optimum position." During surgery, plaintiff was under anesthesia and was taking morphine-like drugs; she stayed in the hospital until June 12. By June 28, when Dr. Etheridge next saw her, he could report she was "doing better" and prescribed mild exercise for her arm. The exercises were to be performed "as tolerable," or as pain allowed. By July 15, plaintiff was progressing well, exercising vigorously, and suffering "mild discomfort." By August 10, he pronounced plaintiff doing "very well." He released her on October 12, 1982.
Plaintiff returned to Dr. Etheridge later with neck pain she attributed to the accident. Dr. Etheridge testified that the neck problems were in no way related to the accident, and when plaintiff took the stand, she did not mention her neck.
Plaintiff complained that her lack of mobility during recovery interfered with her daily chores, dressing and coiffure. We will not minimize the inconvenience and frustration that must have attended this recovery. We do note, however, that plaintiff's daughters and sister were with her almost constantly; as a result, plaintiff does not complain that her personal needs ever went unanswered, or that she ever despaired.
The fact of disability is not disputed. According to Dr. Etheridge, plaintiff sustained a residual loss of 25% of shoulder mobility and 20% of total shoulder function. She cannot button, hook or zip garments from the back, although she admitted this incapacity was partly due to pain, not disability. She is able to work a calculator although her arm tires easily. At the time of the trial, she had a job working for an insurance agency. She also claims she can brush her hair only with difficulty. We accept this but also note that one of plaintiff's daughters is a licensed beautician, and perhaps her skill and companionship have lessened plaintiff's incentive to do her own hair.
On her right shoulder plaintiff has a large scar which necessitated the purchase of some new clothes. The trial judge failed to mention the scar in his written opinion, but we feel it is subsumed in the general award for permanent disability.
Under the circumstances, we can find no abuse of discretion on the trial court's part. An award of $35,000 for injuries such as plaintiff sustained is not unreasonably low and is certainly not less than the lowest possible award. Coco v. Winston Industries, Inc., supra. We therefore affirm the trial court's award.

ARGUMENT NO. 3
Finally, plaintiff contends the trial court miscalculated her loss of earnings. The testimony about her earnings was confusing but the salient details are clear.
On the date of the accident, May 19, plaintiff was unemployed. She had been terminated from her bookkeeping job at C & G Honda about six weeks earlier and was drawing unemployment of $139 a week. She was also job-hunting and had previously interviewed with a Mr. Cryer from Royale Airlines for an account-clerk supervisor position paying around $18,000 a year. In mid-June, Mr. Cryer telephoned her to offer the job. He testified that the job was hers for the taking, but that due to her injury, she did not accept it. Within two weeks, Mr. Cryer hired someone else.
The trial court found plaintiff proved her disqualification from unemployment benefits from May 19 until mid-June, or four weeks. There was some dispute at trial about a Department of Labor printout that allegedly reported plaintiff to have exhausted all available comp two weeks before the accident. No one proved, on the record, that this was the case; instead, the trial judge deferred ruling on that point and apparently decided plaintiff would *841 have drawn comp until mid-June.[3] We will not disturb this conclusion.
The trial court also found plaintiff had proved loss of earnings from the missed opportunity with Royale Airlines. These he awarded her for the period between mid-June until August 3, the date she filed suit. On appeal, plaintiff claims she suffered those lost wages until October 10, when Dr. Etheridge finally discharged her. Plaintiff's petition demanded only "Past lost wages," and the trial court interpreted "past" to mean until date of filing. We disagree. Although LSA-C.C.P. Art. 861[4] requires that items of special damage be specifically alleged, we can find no persuasive authority for confining past lost wages to those accrued before filing. We feel she is entitled to past lost earnings from the date of the accident until the date of trial. These damages were conclusively proved. See Johns v. Hunt Lumber Co., 250 So.2d 543 (La.App. 2d Cir.1971); Jones v. Hall, 419 So.2d 523 (La.App. 2d Cir. 1982); Young v. South Central Bell Tel. Co., 412 So.2d 147 (La.App. 4th Cir.1982). Plaintiff did pray for "all general and equitable relief in the premises."[5] Her petition adequately informed defendants that she was seeking lost wages. We therefore amend plaintiff's judgment to include lost wages from mid-June until October 10, or four months. Cf. Brodhead v. Aetna Cas. & Sur. Co., 233 So.2d 619 (La.App. 3d Cir.1970).
Furthermore, we find a number of arithmetical errors on the part of the trial court. Although plaintiff did not complain of them, we notice them on our own motion and amend the judgment accordingly.
First, the trial court calculated plaintiff's lost earnings on a basis of $1,700 a month. According to Mr. Cryer, the job paid between $17,500 and $18,500 a year, which divides into only $1,500 a month. Since this amount can be calculated with accuracy, it does not fall within the trial court's much discretion. Young v. South Central Bell Tel. Co., supra. Four months at $1,500 makes $6,000, instead of the $2,550 assigned by the trial court. Thus we figure the plaintiff's losses as follows:

(1) Pain, suffering, and permanent
 partial disability $35,000.00
(2) Medical expenses (stipulated) 5,370.92
(3) Lost unemployment benefits
 (4 weeks at $139) 556.00
(4) Lost wages (4 months at
 $1,500) 6,000.00
 __________
 TOTAL $46,926.92

The total must be reduced to eighty percent to allow for Slough's share of the fault, leaving a difference of $37,541.54. Garrett v. Safeco Ins. Co., 433 So.2d 209 (La.App. 2d Cir.1983).
We therefore reverse the lower court's ruling that Thompson was not negligent, amend the lower court judgment to include Thompson and his insurer, and to correct the lost earnings award and arithmetical errors. The pertinent portions of the judgment are amended, in accordance with this opinion, to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, BETTY ANN JACKS, and against the defendants, LEMAN L. WILLIAMS, DAVID W. THOMPSON, and UNITED SERVICES AUTOMOBILE ASSOCIATION, in solido, in the principal amount of Thirty-seven Thousand Five Hundred forty-one dollars *842 and 54/100 ($37,541.54) Dollars with twelve percent per annum interest thereon from August 3, 1982 until paid.
* * * * * *
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, BETTY ANN JACKS, and against the defendant, ALLSTATE INSURANCE COMPANY, in the principal amount of Ten Thousand and 00/100 ($10,000.00) Dollars with twelve percent per annum interest thereon from August 3, 1982, until paid. In the event that Allstate Insurance Company pays any sums under this judgment to the plaintiff, BETTY ANN JACKS, it shall be entitled to judgment rendered herein in its favor against the defendants, LEMAN L. WILLIAMS, DAVID W. THOMPSON, AND UNITED SERVICES AUTOMOBILE ASSOCIATION, to the extent of any such payment made by ALLSTATE INSURANCE COMPANY by virtue of judgment rendered in this paragraph.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of ALLSTATE INSURANCE COMPANY and against defendants, LEMAN L. WILLIAMS, DAVID W. THOMPSON and UNITED SERVICES AUTOMOBILE ASSOCIATION, in solido, in the principal amount of Sixteen Hundred and 00/100 ($1,600.00) Dollars with twelve percent per annum interest thereon from May 17, 1983, until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of ALLSTATE INSURANCE COMPANY and against defendants, LEMAN L. WILLIAMS, DAVID W. THOMPSON and UNITED SERVICES AUTOMOBILE ASSOCIATION, in solido, in the principal amount of One Thousand One Hundred seventyfour and 33/100 ($1,174.33) Dollars with twelve percent per annum interest thereon from August 25, 1983, until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiff, BETTY ANN JACKS, pay the first One Hundred Fifty and 00/100 ($150.00) Dollars of the costs incurred in the trial court; the balance is to be paid, eighty percent by LEMAN L. WILLIAMS, AMERICAN SOUTHERN INSURANCE COMPANY, DAVID W. THOMPSON, and UNITED SERVICES AUTOMOBILE ASSOCIATION, in solido; and twenty percent by ALLSTATE INSURANCE COMPANY.
In all other respects, the judgment appealed from is affirmed. Costs of this appeal are assessed one half to appellant Allstate Insurance Company and one half to appellees David W. Thompson and United Services Automobile Association.
REVERSED IN PART; AMENDED IN PART; AFFIRMED IN PART AND RENDERED.
SEXTON, J., dissents in part and assigns written reasons.
SEXTON, Judge, dissenting in part.
I respectfully dissent in part.
I agree with the views expressed in this opinion with the exception of the finding that the trial court was manifestly erroneous in failing to find negligence on the part of the defendant David Thompson. From my review of the record, I consider this to be a close factual issue, and I am not prepared to say that the trial judge was manifestly in error.
Particularly, I believe that the record is inconclusive as to who conceived the idea to push the vehicle. Moreover, I do not believe that Thompson can be held responsible for a) the failure of Williams to illuminate the vehicle, b) the decision of Williams to turn right rather than to continue through the intersection on the green light, or c) the failure of Williams to observe the Slough vehicle prior to making the turn and clear the roadway.
In other words, it can be said that this record shows that all Thompson did was to help push a disabled vehicle down a vacant, well lit four lane street toward a green light at the apparent request of the owner. *843 This conduct does not amount to negligence.
NOTES
[1] Allstate Insurance Co. also joined in the appeal with respect to plaintiff's argument No. 1.
[2] Plaintiff claims the amount awarded was $3,556. Medical expenses were stipulated at $5,370.92. Before trial, plaintiff received $10,000 under Slough's liability policy (Allstate) and $2,000 from Slough's Med-Pay (Allstate).
[3] The printout shows the Department resumed benefits in mid-August. This action was probably taken on the strength of a "work release" plaintiff claims to have received from Dr. Etheridge on July 28. R.p. 366. Dr. Etheridge had no record of issuing such a document, nor was it brought into evidence. We feel it has little or no probative value.
[4] LSA-C.C.P. Art. 861 provides:

When items of special damage are claimed, they shall be specifically alleged.
[5] LSA-C.C.P. Art. 2164 provides in part:

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.
LSA-C.C.P. Art. 1841 provides in part:
A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled.
See also Guin v. Guin, 378 So.2d 1022 (La. App. 2d Cir.1979); Cox v. W.M. Heroman, 298 So.2d 848 (La.1974).