ROBERT P. JACKSON, Judge.
This is an appeal of a judgment awarding damages to plaintiff for injuries suffered in a collision with the vehicle operated by defendant James A. Scroggins. Scroggins was found by a jury to have been 100% at fault. The trial court granted a directed verdict at the conclusion of the trial in favor of the owner of the vehicle, John R. Rollins. As the insurance carrier on the vehicle, Nationwide Mutual Insurance Company was also found liable for the award of $50,000.00. This is the total award. The verdict form does not specify which type of damages this amount represents. Plaintiff appeals the amount of the award. The trial court ruled that Rollins and Scroggins were underinsured at the time of the accident. As a result of the accident plaintiff, eighty-one years old at the time, suffers impaired use of his right shoulder. He asserted claims for medical expenses in the amount of $2,293.28 and past expenses for twenty-four hour nursing care, a driver and *1313 Social Security payments all in the amount of $25,828.08. Additionally he projects future expenses for nurse and driver in the amount of $149,214.00 or as much as $173,-048.00. He bases these figures on a 6.7 year average life expectancy and various inflation and discount rates. Thus, this additional amount will provide him with driving assistance and twenty-four hour nursing assistance for the rest of his expected lifetime.
It is not clear what figures the jury award represents. If they meant to compensate him for his past medical expenses and his past driving and nursing expenses, then he would be left with some $25,000.00 in general damages. The parties do agree that the central issue on appeal is Mr. Moresi’s right to future nursing and driving assistance. The necessity for these future expenses was the subject of much testimony as well as oral argument.
Testimony indicates that prior to the accident plaintiff performed his daily functions independently and drove himself to work everyday despite his age. Testimony by numerous lay witnesses indicated that plaintiff after the accident could not perform daily activities such as bathing, dressing and driving. His daughter, Mrs. Renee Broussard, described his difficulty in combing his hair, told how he spilled many beverages, and that he must turn the pages of a newspaper with his left hand.
Dr. Perry Sudduth, a General Surgeon, had treated plaintiff for years and treated him for a short time after the accident. He referred Mr. Moresi to Dr. Roland Miller, an Orthopedic Surgeon, not yet certified in his specialty. He abscribed a 25% permanent loss of function in his shoulder and recommended that he obtain driving and overnight nursing assistance. He described this assistance as “necessary”. On cross-examination, Dr. Miller admitted that forecasting the need for driving assistance involved some speculation and that he never prescribed overnight nursing care. But, he continued to describe these expenses as necessary. Dr. Miller discharged the plaintiff from his care in July, 1984.
Dr. James C. McDaniels examined plaintiff on September 26,1984 at the request of Hartford. He assessed a greater degree (30-35%) of permanent impairment but disagreed that overnight care was required. He felt that plaintiff would be able to compensate for his impaired functioning.
A factual finding may be overturned if a reading of the record indicates that the finding is manifestly erroneous, which is defined as clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), reh. den. The testimony of the lay and expert witnesses indicate manifest error. That plaintiffs lifestyle has changed dramatically is unrebutted. The two orthopedic surgeons essentially disagree only as to the extent to which plaintiff will be able to compensate for his injury, but Dr. Miller was the treating physician. The expenses, incurred due to the injury include salary for overnight care and driving assistance. The need for daytime or morning care is not clearly established since this morning nurse seems to perform primarily household duties. Accordingly the amount in compensation for future nursing and driving assistance is set at an additional $75,-000.00 in special damages.
The trial judge took judicial notice that Hartford knows of or has issued no policies to either Mr. Scroggins or Mr. Rollins. A representative from the Department of Public Safety testified that their records show no insurance coverage of Mr. Scroggins. Hartford introduced no policies held by Mr. Scroggins. LSA-R.S. 22:1406(D)(6) provides that upon proving nonresidency or lack of Louisiana citizenship and presentation of a sworn notarized affidavit by an official of the Department of Public Safety attesting to the lack of insurance coverage, the burden to prove the uninsured status shifts to the uninsured motorist carrier. Plaintiff has satisfied both requirements. The parties stipulated to the nonresidency and lack of citizenship and the DPS representative testified similarly. That this stipulation was not introduced into evidence is of no moment. It still remains part of the record. *1314 Rollins and Scroggins were represented by their own attorney. Therefore, the trial judge’s ruling that Rollins and Scroggins were underinsured is affirmed.
In addition plaintiff cites as error the amount of general damages. Defendant Hartford argues that the amount of general damages is $47,706.72, which figure represents the total award less the medical expenses. Plaintiff Moresi argues that the general damages total $25,000.00 as explained above. Does either figure represent an abuse by the jury of its much discretion? This Court answers in the negative. Hartford cites one case in which the plaintiff sustained a residual loss of 25% of shoulder mobility and 20% of shoulder function. Despite the admitted inconvenience, the court upheld an award of $35,-000.00 in general damages. Jacks v. Allstate Insurance Co., 463 So.2d 833 (La. App. 2nd Cir.1985). Hartford cites two more cases in which the plaintiff sustained permanent disability of ten to fifteen percent but in which the court upheld general damage awards of $10,000.00 Lambert v. Donald G. Lambert Const. Co., 371 So.2d 1167 (La.App. 4th Cir.1978); Rosensweig v. Travelers Ins. Co., 333 So.2nd 334 (La.App. 4th cir. 1976). To the contrary, plaintiff cites a case where plaintiff suffered decreased sensation in two fingers of the right hand, atrophied muscles of the right forearm, partial nerve damage, and 27% disability of the right arm and 16% of the body as a whole. The court upheld an award of $50,000.00. Morgan v. Willis— Knighton Medical Center, 456 So.2d 650 (La.App. 2nd Cir.1984). Plaintiff also cited two cases involving leg injuries which upheld awards of $87,500.00 and $150,000.00. O’Donnell v. Fidelity General Ins. Co., 344 So.2d 91 (La.App. 2nd Cir.1977) (fracture of the proximal fibula, torn cartilage and ligaments in right knee and sprain in lower back resulting in hospitalization of over a month); Landos v. Hartford Acc. & Indem. Co., 366 So.2d 621 (La.App. 3rd Cir.1978) (a 77 year old woman with broken leg with skin peeled loose) (respectively). In the unreported case of Betty T. Burgess v. City of Shreveport, et al, 471 So.2d 690 (La.1985), the Court increased the general damages from $75,000.00 to $200,000.00. But, the plaintiff in that case went through difficult surgery, two lengthy hospital stays and had to eventually move into a nursing home. Thus, it cannot be said that the jury abused its much discretion in awarding Mr. Moresi the amount of general damages in question, whether it be $25,-000.00 or $47,000.00 in general damages.
For the above reasons the jury verdict in the amount of $50,000.00 is increased to $125,000.00. In all other respects the judgment of the lower court is affirmed. Costs are to be taxed to defendants.
AFFIRMED, AS .AMENDED.