SHORTESS, Judge.
This is a suit to recover for personal injuries Cecil E. Newman (plaintiff) sustained when he slipped and fell on Fred Ellis’ (defendant) patio. After a trial on the merits, the jury awarded plaintiff $25,-000.00 for past, present, and future physical pain and suffering; $50,000.00 for permanent impairment, disability, and loss of function; and $25,000.00 for medical expenses, past and future. The jury also found plaintiff to be 25% at fault in the accident. Defendant appeals as excessive the general and special damage awards and the jury’s verdict setting his fault at 75%.
Plaintiff has answered the appeal but has not challenged the verdict. Therefore, the jury verdict setting plaintiff’s liability at 25% is final.
FAULT
The accident occurred on February 11, 1987, between 4:00 and 4:30 in the afternoon. Defendant, plaintiff’s brother-in-law, had invited plaintiff over to visit that day. During the course of their visit, defendant asked plaintiff to bring in more firewood from the patio. As plaintiff took his second or third step onto the patio, a flock of blackbirds, apparently feeding on food placed in the backyard by defendant, flew up and temporarily distracted plaintiff. While distracted, plaintiff stepped on a round piece of starter wood estimated to be 18 to 20 inches long, and slipped and fell, fracturing his upper right humerus. Defendant testified that earlier in the day he dropped some firewood on the patio during a previous trip for firewood and had forgotten to pick it up.
Defendant contends on appeal that the piece of starter wood lying on the ground did not present an unreasonably dangerous condition. Therefore, defendant had no duty of prior discovery, correction, or warning regarding this condition.
The duty owed by a landowner to a guest such as the plaintiff is set forth in Shelton v. Aetna Casualty Co., 334 So.2d 406, 410 wherein the court stated:
[Tjhe landowner owed the plaintiff a duty to discover any unreasonably dangerous conditions on the premises and to either correct the condition or warn ... of its existence.... [However, t]he duty of a landowner is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Thus the landowner is not liable for an injury resulting from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to a visitor as to the landowner.
(Citations omitted.) Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406, 410 (La.1976). This duty is the same regardless of whether plaintiff asserts fault under a negligence theory, or a strict liability theory, the difference in the two being the burden of proof regarding the defendant’s knowledge of the danger. Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985).
Since defendant in this case knew that the piece of starter wood lay on the patio outside the woodbin, we need only examine whether the limb created an unreasonably dangerous condition. In making this determination, factors to be considered include the time of day, the nature of the pathway, distractions to attention, familiarity with the obstruction, and the size, situation, and color of the obstruction. Dunaway v. Rester Refrigeration Service, 428 So.2d 1064 (La.App. 1st Cir.), writs denied, 433 So.2d 1056 (La.1983); and 433 So.2d 1057 (La.1983).
Applying the above-mentioned factors to the present case, we conclude that the jury did not commit manifest error. The accident occurred on a cold day near dark. The patio and the small limb in question were approximately the same col- or. Furthermore, plaintiff was distracted *173 by birds attracted to the property by defendant. Although plaintiffs numerous visits to the home proved familiarity with the premises, on balance, the jury’s finding holding defendant responsible for creating, and not correcting, a dangerous condition was not clearly wrong.
QUANTUM
GENERAL DAMAGES
Plaintiffs injury required surgery and hospitalization. On February 17, 1987, the 62-year-old plaintiff, a carpenter by trade, underwent open reduction internal fixation with rush rods to his proximal humerus along with autochthonous iliac bone graft from his left ileum. Plaintiff was in the hospital for a total of ten days. After surgery, plaintiff began physical therapy, which continued for an additional five to six weeks after his release from the hospital.
After his release from the hospital, plaintiff returned to see his treating physician, Dr. Ronald Sylvest, on March 10, 1987. At this time, plaintiff complained of weakness with abduction of his right arm and drainage in the wound area. A physical examination revealed mild atrophy of the right shoulder and that external rotation, flexion and abduction produced complaints of pain. Dr. Sylvest prescribed continued physical therapy and pain medication.
Plaintiff returned to see Dr. Sylvest on March 31, 1987, with complaints of constant pain. Dr. Sylvest diagnosed plaintiff as having adhesive capsulitis, or adhesive bursitis, which consists of pain in the shoulder, stiffness, and limitation of motion. Dr. Sylvest continued plaintiff on his previously set course of treatment. But, Dr. Sylvest left open the possibility of future closed manipulation of his right shoulder under general anesthesia.
Dr. Sylvest discharged plaintiff on December 10, 1987. A physical examination performed at this time revealed excellent healing of the fracture site; however, plaintiff still experienced some pain associated with changes in the weather, and he still suffered from loss of range of motion. According to Dr. Sylvest, plaintiff suffers from a permanent 20% loss of range of motion of the right upper extremity.
The injury currently affects many areas of plaintiffs life. Plaintiff now experiences difficulty in performing numerous daily activities, such as combing his hair. Because the injury affects his dominant right arm, plaintiff no longer engages in his hobbies; namely, woodworking, hunting, fishing, and gardening. Moreover, because of his arm twitching at night, plaintiff sleeps in another room rather than disturb his wife’s sleep. Nor can plaintiff help his wife, who suffers from polio, around the house as much as he did before the accident.
The jury awarded plaintiff $25,-000.00 for past, present and future pain and suffering; and $50,000.00 for permanent impairment, disability and loss of function. Defendant challenges both of these awards as excessive. He relies on five cases as support for this contention: Gormley v. The Grand Lodge of State of Louisiana, 503 So.2d 181 (La.App. 4th Cir.), writ denied, 506 So.2d 1227 (La. 1987); Rosensweig v. Travelers Insurance Co., 333 So.2d 334 (La.App. 4th Cir.1976); Baldwin v. Schwegmann Giant Supermarkets, 449 So.2d 167 (La.App. 4th Cir.), writ denied, 450 So.2d 967 (La.1984); Jacks v. Allstate Insurance Co., 463 So.2d 833 (La.App. 2d Cir.), writ denied, 466 So.2d 468 (La.1985); and Moresi v. Nationwide Insurance, 488 So.2d 1311 (La.App. 3d Cir. 1986). We find these cases inapposite. When the lower court abuses its discretion by making an excessively high award, an appellate court can disturb the award, but only to the extent of lowering it to the highest point which is reasonably within the discretion afforded that court. See Reck v. Stevens, 373 So.2d 498, 500 (La.1979). All of the cases cited by defendant concern appeals by plaintiffs complaining of insufficient awards. These cases can be used only for setting the lowest limit awardable by a lower court. They are not *174 examples of the highest limits awardable by a lower court.[1]
After a thorough review of the record and pertinent jurisprudence, we conclude that the award does not constitute a clear abuse of the great discretion afforded to a jury. LSA-C.C. art. 2324.1.
SPECIAL DAMAGES
The jury also awarded plaintiff $25,-000.00 for medical expenses, past and future. The medical bills incurred by plaintiff and introduced by stipulation into evidence totaled $13,878.34. Defendant contends that the highest amount awardable for future medical treatment under the facts presented by this case is $5,000.00.
Future medical expenses are a legitimate form of recovery, even though they are not susceptible of precise mathematical calculation. However, awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. Weston v. Bayou Sale Contractors, 506 So.2d 818 (La.App. 1st Cir.1987). Here, the record amply supports the award.
The record reflects that in Dr. Syl-vest’s opinion plaintiff could, in the future, benefit from a closed manipulation of his right shoulder under local anesthesia. This procedure might increase his range of motion and decrease his disability evaluation. Dr. Sylvest also opined that plaintiff could require removal of the metal hardware from his right upper extremity because of hardware loosening, or allergic reaction. Dr. Sylvest also stated that this future care will cost between $3,000.00 and $5,000.00. However, the record is unclear as to whether the stated amount includes the combined cost of both treatments, or whether each form of treatment will run between $3,000.00 and $5,000.00. In this day and age of high health care costs, a reasonable jury could find that the combined forms of treatment will run between $6,000.00 and $10,000.00. Moreover, plaintiffs uncontra-dicted testimony establishes that he will need occasional x-rays taken to determine if the metal hardware implanted in the shoulder has slipped out of position. The .record also reflects that plaintiff may need future medical treatment of some form whenever a change in weather increases his discomfort. From the stipulated medical bills, we can extrapolate the cost of the x-rays and other possible medical needs. See Davis v. Husqvarna Motor, 561 So.2d 847 (La.App. 2d Cir.1990). In sum, we conclude the record amply supports the jury award for future medicals in the amount of $11,121.66.
For the foregoing reasons, the judgment is hereby affirmed at defendant’s costs.
AFFIRMED.

. The remaining case, Rosensweig, a case decided almost 15 years ago, is factually distinguishable. In Rosensweig, the plaintiff did not undergo surgery.