598 So.2d 595 (1992)
Joseph D. DAUGHERTY
v.
CROSS MARINE, INC.
No. 91-CA-0897.
Court of Appeal of Louisiana, Fourth Circuit.
April 14, 1992.
*596 Capitelli & Wicker, T. Carey Wicker, III, Richard A. Bordelon, New Orleans, for plaintiff/appellee.
Burke & Mayer, Wm. Daniel Wellons, William B. Schwartz, New Orleans, for defendant/appellant.
Before LOBRANO and ARMSTRONG, JJ., and TREVOR G. BRYAN,[*] J. Pro Tem.
TREVOR G. BRYAN, Judge Pro Tem.
In this maritime action, defendant, Cross Marine, Inc. (Cross) appeals a trial court judgment on the issues of plaintiff's status as a seaman, plaintiff's negligence, seaworthiness of a vessel and damages.
Plaintiff, Joseph D. Daugherty, an employee of Cross, sued Cross under the Jones Act, general maritime law, and laws of the State of Louisiana, for injuries he allegedly sustained in the course of his employment. After trial, a commissioner of civil district court found that Daugherty qualified as a Jones Act seaman and was injured as a result of the negligence of Cross and the unseaworthiness of one of its vessels. The trial judge granted judgment in favor of Daugherty, adopting the commissioner's report. Cross appeals. We affirm, but amend the judgment of the trial court.
In August 1986, Daugherty was hired by Cross to work as a deckhand aboard a jack-up barge named the M/V SOUTHERN CROSS V. He was to work offshore, on a fourteen day on/fourteen day off schedule.
In October 1986, Daugherty advised Cross that his girlfriend was seriously injured in an automobile accident, and he needed to take time off to care for her. About a month later, Mike McEntee of Cross asked Daugherty if he could return to work offshore, but Daugherty said no. A few weeks later McEntee again contacted Daugherty and asked if he would like to make extra money driving a truck to deliver groceries and supplies to its vessels deliveries commonly known as "hotshot" runs and ordinarily offered to Cross employees on their days off. Hotshot drivers were paid hourly whereas deckhands were paid by the day. Apparently, hotshot drivers did not receive the benefits afforded deckhands.
Over the next few weeks, Daugherty did two hotshot runs. On December 24, 1986, he was injured while performing his third hotshot run involving the delivery of groceries and a washing machine to a Cross vessel docked in Intracoastal City.
*597 When Daugherty arrived at the vessel the captain was scrubbing the deck with a soapy solution. Rather than rinsing the deck off with water, the captain intended to let a light rainfall rinse the deck. Daugherty put the first load of groceries into a basket which was placed on the deck by a crane. He boarded the vessel twice to bring two loads of paper towels to the galley. The second time, he crossed the deck and slipped and fell as he stepped down into the hatchway leading to the galley. He fractured his left forearm, requiring surgery to have a plate and graft placed at the fracture site. One month later Daugherty returned to work as a hotshot driver, and eventually obtained other employment in the sales field.
In the next two and a half years Daugherty underwent two more surgeries, one to replace the plate which became distorted in the healing process and another to remove it. After the plate was removed, Daugherty's treating physician assigned residual disability of ten percent to his left arm and restricted him in the use of his arm.
In its first assignment of error, Cross contends that the trial judge erred in finding that at the time Daugherty was injured, he was a seaman for Jones Act purposes. Cross claims that on the day of his accident, Daugherty was performing land-based work, requiring that his only remedy against Cross be under the Longshore and Harbor Workers' Compensation Act (LHWCA). Arguing that because Daugherty never gave a specific time period for his return to duty as a deckhand, his reassignment as a hotshot driver was permanent. Cross maintains that there was no competent evidence presented to show that the change in Daugherty's duties was for a temporary period. We disagree.
Documentary evidence presented at trial, along with the testimony, supports the findings that Daugherty was hired by Cross as a deckhand, that his status never changed and that all of the relevant parties assumed that he would return to work as a deckhand when the health of his girlfriend permitted. Thus, the conclusion that Daugherty was a seaman at the time of his accident is justified.
After being hired by Cross as a deckhand, Daugherty worked offshore for a total of 35 days2½ fourteen-day shifts. After he informed Cross that he would be unable to work offshore for an indefinite period of time, he received nothing from Cross indicating a change in his employment status, nor was he ever fired by Cross. Indeed, the testimony indicates that on several occasions, McEntee, and even the vessel's captain asked him to return to work offshore. McEntee, in fact, stated that hotshot runs were temporary assignments.
More importantly, Cross never changed Daugherty's employment status in his personnel file. And, in completing the "Employer's First Report of Injury" form pertaining to Daugherty's accident, Cross listed Daugherty's occupation as deckhand and his schedule as fourteen days on/fourteen days off. His hourly wage is listed in the accident report as $6.88, not the $6.00 per hour paid to hotshot drivers. Other Cross forms also list Daugherty's occupation as a deckhand.
We find these circumstances are sufficient to support a finding that Daugherty's assignment as a hotshot driver was temporary and that his general pattern of employment as a deckhand was not altered by the temporary assignment as a hotshot driver. See, Savoie v. Otto Candies, 692 F.2d 363 (5th Cir.1982). That Daugherty never provided Cross with a definite date he would return to work offshore is minimized by the failure of Cross to treat him as anything but a deckhand. Furthermore, since the evidence showed that hotshot runs are typically done by off-duty crew members, the nature of the assignment itself does not change Daugherty's status as a deckhand. It was within the trial court's discretion to overlook McEntee's vague remembrance that Daugherty once told him that he did not think he would ever return to work offshore.
In its second assignment of error, Cross contends that the trial court erred by failing to assess any negligence to Daugherty *598 in light of what it claims is clear evidence of Daugherty's negligence, i.e. walking through what was obviously soapy water wearing a type of sandals.
The trial testimony indicates that when Daugherty arrived at the vessel to deliver the supplies, the captain was scrubbing the deck. Instead of hosing off the deck, however, he was letting a light rainfall rinse the soapy solution off. Moreover, both Daugherty and the captain believed that Daugherty would help unload the supplies, and the captain said nothing to Daugherty about the type of shoes he was wearing. There was conflicting testimony given on the presence or absence of a mat at the galley entranceway.
Given this testimony, the trial judge did not err in finding that Cross was negligent. In a Jones Act case, evidence of the slightest negligence is sufficient to sustain a finding of Jones Act liability, and the plaintiff's burden to show causation is "featherweight." Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1352 (5th Cir. 1988), cert. denied, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). Under this standard, the trial court's finding that the captain's decision to let a soapy solution remain on the deck to be rinsed away by a light rainfall when he knows or should know that people will traverse the deck was negligent is supported by the evidence and thus not clearly erroneous.
Daugherty's decision to cross the soapy deck wearing sandals on the other hand, is not per se negligent. Although a seaman has a duty to use reasonable care, his duty to protect himself is slight since this duty is tempered by the realities of maritime employment. Johnson, supra. Generally, a seaman has no duty to find the safest way to perform his work; rather, the duty to provide for a safe course of conduct lies primarily with the vessel owner. Id.
There is ample evidence that Daugherty was careful in stepping across the soapy deck. Accordingly, there is no error in the trial judge's refusal to assess negligence to Daugherty.
Cross also argues that the trial judge erred in finding merit in Daugherty's claim of unseaworthiness of the vessel. The court found that the soapy condition rendered the vessel dangerous and unseaworthy.
In an unseaworthiness claim, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was a direct result or a reasonably probable consequence of the unseaworthiness. Smith v. Trans-World Drilling Co., 772 F.2d 157, 162 (5th Cir. 1985). The testimony about the presence of a soapy solution on the deck in the pathway to the galley and the circumstances of Daugherty's accident, as well as the statement from the vessel's cook that the deck does "hold water" support the trial judge's finding that the vessel was unseaworthy. We find no merit in Cross's argument to the contrary.
Cross also complains of the amount the trial judge awarded to Daugherty for past lost wagesthose between the date of the accident and trial. The evidence shows that the only period of time in which Daugherty was incapable of working after his accident were the three occasions when he was hospitalized and recuperating from surgeriesa total of two and one-half months. Indeed, he actually earned in excess of $17,000.00 in sales related jobs since the accident. Both the plaintiff's and the defendant's economists calculated his past lost wages using the income they believed he could have earned for that period (the annual wage base). The parties dispute what wage base should be used.
Plaintiff's economist calculated the base using only the higher wages Daugherty earned as a deckhand a few months prior to the incident and using a fourteen day on/seven day off work schedule instead of fourteen days on/fourteen days off. The economist did not know that, on the day of the incident, Daugherty was not earning wages as a deckhand, but rather earning the lesser wages of a hotshot runner. When calculating the loss of income experienced by seamen, maritime *599 law requires that the calculation of wage loss begins with the gross earnings of the injured party at the time of injury. Culver v. Slater Boat Company, 722 F.2d 114, 117 (5th Cir.1983), cert. denied, 467 U.S. 1252, 104 S.Ct. 3537, 82 L.Ed.2d 842 (1984). Thus, Daugherty's annual wage base should take into account the wages he made doing hotshot runs for several months. The trial court erred in using the figure for past lost wages supplied by plaintiff's economist; the base wage and the resulting amount for past lost wages calculated by defendant's economist is, on the other hand, reasonable. Hence, we lower the amount awarded to Daugherty for past lost wages to $1,355.66.
In another assignment of error, Cross argues that the trial court's award for pain and suffering is inconsistent with the facts and with other awards in cases with similar facts. We find no merit in this assignment of error.
After the accident, Dr. Naum Klainer, an orthopedist, treated Daugherty for a fracture in his left arm, which required surgery. Dr. Klainer did a bone graft (from Daugherty's elbow) and inserted a metal plate in Daugherty's arm. Several months later, the plate began to bend, causing Dr. Klainer to operate again to reapply a bone graft from Daugherty's hip. A little over a year after the accident, Dr. Klainer discharged Daugherty from care, assessing a disability rating of ten percent for his arm. Over one year later, in April 1989, Daugherty underwent surgery again to have the plate removed.
Overall, while the evidence shows that Daugherty's recovery was generally good, that he did not experience an extreme amount of pain and that he was a good patient, he nevertheless underwent three surgeries under general anesthesia for his injury. The atrophy in the muscles of his arm resulted in a ten percent permanent disability of the arm. The cases cited by Cross all involve facts which are clearly distinguishable from this case.
Given the facts in this case, the trial court's award of $90,000.00 for general damages is not excessive.
Cross's compensation carrier intervened in this suit to collect reimbursement for medical expenses and weekly benefits it paid to Daugherty. From the trial judgment, it appears the trial judge erroneously included the amount the compensation carrier paid in weekly benefits to Daugherty in the award for reimbursable medical expenses. We amend this portion of the judgment to account for this error.
In Bourgeois v. Puerto Rican Marine Management, 589 So.2d 1226, 1230 (La. App. 4th Cir.1991), this court held that "all provisions of state law apply, ... when the plaintiff files suit under state law, regardless of whether the plaintiff has received state workers' compensation benefits or federal LHWCA benefits." (citations omitted). The Louisiana Supreme Court, in Brooks v. Chicola, 514 So.2d 7 (La.1987), held that a worker's compensation carrier is limited to reimbursements for payments made from a employee's special damages. Although Brooks was legislatively overruled by Acts of 1989, No. 454, Sect. 4, effective date January 1, 1990, which amended LSA-R.S. 23:1103, the amendment has been held to be substantive in nature, and not retroactive. Harrison v. Otis Elevator Co., 935 F.2d 714 (5th Cir. 1991); Harris v. Ballansaw, 576 So.2d 602 (La.App. 4th Cir.1991).
Therefore since we have reduced plaintiff's damages for past lost wages to $1,355.66, intervenor is limited to this amount for reimbursement of weekly compensation benefits.
Accordingly, for the foregoing reasons, we amend the judgment and, as amended, affirm. All costs of this appeal are assessed to Cross.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[*] Due to the expiration of Judge Bryan's term of office prior to rendition, but after his concurrence therein, this opinion is rendered unanimously by Judges Lobrano and Armstrong.