649 So.2d 493 (1994)
Vorice H. FAUL, Plaintiff-Appellee,
v.
STATE of Louisiana, DOTD, Defendant-Appellant.
No. 94-502.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
*495 Jennifer J. Bercier, Cameron, for Vorice H. Faul.
Kathleen Kay, Lake Charles, for State DOTD.
Before GUIDRY, C.J., and KNOLL and WOODARD, JJ.
WOODARD, Judge.
This is a seaman's case. The defendant, the State of Louisiana, DOTD, appeals from the trial court's ruling that the Cameron Ferry No. 1 was unseaworthy and an award to the plaintiff, Mr. Vorice Faul, of $105,958.87 in specific damages for future lost wages and $50,000 in general damages.

FACTS
Mr. Vorice Faul worked for the state of Louisiana as a deckhand aboard the Cameron Ferry No. 1, which transported vehicles between Monkey Island and Cameron, Louisiana. Mr. Faul's duties as a deckhand included opening the gates of the ferry so that vehicles on board could leave. He normally accomplished this task by unlatching the gates from the inside and carrying them while walking forward.
Although the captain had the authority to refuse to allow a vehicle to cross, ferry employees were instructed that any vehicle should be permitted to board the ferry as long as the gates could still be closed. The employees were never instructed as to how much, if any, room should be left between the gate and vehicles on board the ferry.
Approximately once every two years, the regular ferry was placed in dry dock for general maintenance and repairs, and a smaller barge was provided as a substitute. The regular ferry was dry docked in this manner on March 13, 1991, when Mr. Kerry Bailey sought to load a truck pulling a flat bed trailer onto the substitute ferry. The truck did not initially fit onto the ferry, and the ferry employees were able to close the gates of the ferry only after Mr. Bailey had shortened the truck by adjusting its fifth wheel. No other vehicles fit aboard the ferry, and according to the captain, the ferry was loaded "from gate to gate" after the truck was boarded. The weight of the load caused the ferry to ride so low that water washed over the ferry's apron.
When the ferry reached its destination, Mr. Faul attempted to open its exit gate in the usual manner, but he was unable to do so because there was insufficient space between the truck and the gate to allow him access to the gate. Mr. Faul therefore climbed over the gate, unlatched it from the outside and began to open it while walking backwards. As he took his first step backward onto the ferry's apron, Mr. Faul slipped on oily water *496 that had collected there and was injured when he fell on his buttocks.
Mr. Faul subsequently brought this action against the State, alleging under the Jones Act and general maritime law that the ferry was unseaworthy and that this unseaworthiness caused his injury. Following a nonjury trial, the trial court held for Mr. Faul, awarding him $105,958.87 in specific damages and $50,000 in general damages. Following the denial of the State's motion for a new trial, the State appeals and asserts the following assignments of error: (1) The Court erred in finding the vessel unseaworthy; (2) Assuming the court did not err in finding the vessel unseaworthy, it nevertheless erred in failing to attribute a portion of negligence to the plaintiff, as well, for his contributory negligence; (3) The trial court erred in awarding a loss of future income to Mr. Faul to the age of 65; and (4) The trial court erred in granting an excessive award for general damages.

LAW

WAS THE CAMERON FERRY NO. 1 UNSEAWORTHY?
Under general maritime law, a shipowner has an absolute duty to provide a vessel that is seaworthy. Babineaux v. Lykes Bros. S.S. Co., Inc., 608 So.2d 659 (La.App. 3 Cir.1992), writ denied, 610 So.2d 819 (La.1993). The duty to provide a seaworthy vessel requires that the vessel's gear, appurtenances and operation must be reasonably safe. Jenkins v. Kerr-McGee Corp., 613 So.2d 1097 (La.App. 3 Cir.), writ denied, 616 So.2d 701, 702 (La.1993). This duty imposes nondelegable liability without fault and is independent of the Jones Act duty to exercise reasonable care. Id. A factual finding of unseaworthiness by the trier of fact is reviewed under the clearly erroneous standard. Griffin v. LeCompte, 471 So.2d 1382 (La.1985).
Mr. Faul testified that he never received instructions from Mr. Boyd Nunez, the marine operations superintendent for the Louisiana Department of Transportation and Development, or from Mr. Leroy LaBove, the captain of the tugboat that pushes the Cameron Ferry No. 1, concerning the length of vehicles that should be permitted to cross on the ferry. Mr. Faul further testified that he was never given any specifications from his employer as to how much room should be left once the gates were closed. Mr. Faul's testimony was corroborated by the testimony of Mr. LaBove and Mr. Nunez. Mr. LaBove testified that as long as the gates could be closed, the vehicle would be loaded onto the Cameron Ferry No. 1. Mr. Nunez testified that the only instruction he gave the captains and deckhands was "any vehicle that can get on the ferry and we can properly shut the safety gates, well, we try to get them across." Mr. David Cole, who is a consultant in the marine industry, testified that Mr. Faul was given "defective" instructions because he was not given specific instructions on the amount of space to be maintained between the vehicle and the gate, and that the barge was therefore unsuitable for use as a ferry.
In an unseaworthiness claim, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury. Daugherty v. Cross Marine, Inc., 598 So.2d 595 (La.App. 4 Cir.1992). Regarding this issue, the trial court noted in its reasons for decision:
The failure to give such restrictions and instructions on the amount of space to be maintained between the gates and nearest vehicle enabled Mr. Bailey's truck to cross on the ferry even though it stretched from "gate to gate" and its weight caused the ferry to ride so low that water washed over its apron. Further, the truck's length so crowded the ferry's exit gate that the plaintiff was unable to slip between the truck and the gate to open it in his usual manner. Instead, the plaintiff was forced to open the gate from the outside, during which he stepped into a mixture of oil and water located on the apron and fell and injured himself.
The trial court obviously concluded that the unseaworthy condition on the Cameron Ferry No. 1 met the causation test.
After a thorough review of the record, we find no manifest error in this finding.

*497 WAS MR. FAUL NEGLIGENT?

A seaman's duty is to do his work as instructed, and his duty to protect himself is slight. Babineaux, supra. A seaman has no duty to find the safest way to perform his work. Rather, the duty to provide a safe course of conduct lies primarily with the vessel owner. Daugherty, supra. A factual finding by the trier of fact that the seaman was not negligent is reviewed under the clearly erroneous standard. Babineaux, supra.
The State urges that Mr. Faul was negligent because he "chose" to walk backwards to open the gate to the ferry when he could have unlatched the gate, stepped sideways, pushed the gate open, turned, and walked forward to place the gate in an open position.
Mr. Faul did not "choose" to walk backwards to open the gate to the ferry. He was forced to walk backwards because there was insufficient room between the truck and the gate to walk forward to open the gate. He did not have the opportunity after he unlatched the gate to step sideways and then walk forward to open the gate. Mr. Faul's testimony is undisputed that after he unlatched the gate, he took one step backwards and then fell on his buttocks. Thus, we conclude that the trial court was not manifestly erroneous in finding that Mr. Faul was not negligent.

SHOULD MR. FAUL HAVE BEEN AWARDED LOST INCOME TO AGE 65?
Louisiana jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and such awards will be disturbed upon appellate review only when there has been a clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). Under the clear abuse standard, appellate courts review the evidence in the light most favorable to the judgment to determine whether the trier of fact was clearly wrong in its conclusions. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The State contends that the trial court erred in awarding lost future income to Mr. Faul to age 65 because he testified that he had planned to retire from his deckhand position at age 62. The State argues that the trial court should have taken into account the specific "known fact" that Mr. Faul would retire at age 62, rather than considering only the general work life expectancy tables.
Mr. Faul stated only that he would retire from the deckhand position "if everything went all right." He did not thereby announce his permanent and immutable decision to retire at age 62. His plan was tentative and contingent upon speculative future conditions. Thus, the trial court did not abuse its discretion by refusing to construe it as a "known fact."

WAS THE AWARD OF $50,000 FOR GENERAL DAMAGES EXCESSIVE?
The discretion vested in the trier of fact in awarding general damages is "great, and even vast," so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). Only when the award is beyond that which a reasonable trier of fact could assess should an appellate court reduce the award. Id. General damages include mental and physical pain and suffering, inconvenience, the loss of physical enjoyment, and other losses of life or lifestyle that cannot be definitively measured in monetary terms. Montgomery v. Opelousas Gen'l Hosp., 546 So.2d 621, 623 (La.App. 3 Cir.1989).
After the accident, Mr. Faul experienced continual pain in his lower back and legs. He initially consulted Dr. Richard Sanders, a general practitioner, who diagnosed him on March 14, 1991 as suffering from a contusion of the lumbar spine. On April 1, 1991, Dr. Sanders noted that Mr. Faul continued to experience pain and recommended that he consult an orthopedic surgeon.
Accordingly, Mr. Faul visited Dr. Michel Heard, an orthopedic surgeon, on April 22, 1991. Dr. Heard testified that Mr. Faul had a "preexisting, asymptomatic, degenerative condition in his low back area that became symptomatic only as a result of his accident;" that Mr. Faul has "a pain problem" that *498 must be treated conservatively with prescription medication and activity restriction; that Mr. Faul's pain will continue indefinitely; and that this condition could not be improved to any significant, lasting degree through surgery.
An award of $50,000 in general damages for inoperable chronic back pain is clearly within the discretion given to the trier of fact. Deville v. State Farm Ins. Co., 617 So.2d 1255, 1259 (La.App. 3 Cir.1993). Thus, we conclude that the trial court did not abuse its vast discretion in awarding Mr. Faul $50,000 in general damages.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.