| iWALTZER, Judge
concurring in part and dissenting in part.
I concur in that part of the majority opinion that finds that Dr. Licciardi breached the applicable standard of care in his treatment of Amanda Torbert. In addition to the evidence mentioned in the majority opinion, Dr. Reyes’s testimony and Dr. Haddad’s treatment offer persuasive support for the trial court’s liability finding. Dr. Reyes testified that under the circumstances of Amanda’s injury he would take an x-ray after the plaster was applied, which Dr. Licciardi failed to do. Dr. Reyes testified that for the next three weeks he would take weekly x-rays. If a patient presented with a loose cast, he would have taken an x-ray and probably would have removed the east, applied a new cast and made the cast snugger. He testified that in order to make an informed decision as to whether the cast is too loose, a doctor must make a clinical determination by examining the arm in relation to the cast. Dr. Reyes testified that angulation complications may be avoided by closely following the patient to determine the point at which angu-lation was becoming more accentuated. Here, according to Dr. Reyes, the problem was exacerbated because Amanda was a young, active person. Dr. Licciardi failed to make these clinical determinations and failed to follow Amanda’s healing process closely, violating the standard of care to which Dr. Reyes testified.
RPr. Haddad’s records show that during his treatment of Amanda, he in fact changed her cast every time he saw her following the corrective surgery. Dr. Licciardi failed to do so when Amanda was under his care.
I respectfully dissent to the majority’s af-firmance of the jury’s clearly inadequate award of general damages. While I recognize that under the standard set forth in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, -U.S. -, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the jury’s discretion in setting general damages is “great” and “vast,” I find that an award of less than $50,000 to a young girl who was forced to undergo two needless surgeries, who suffered the pain and inconvenience of extended recovery and physical therapy, who sustained a permanent partial 25% disability and who was the object of scorn and derision when, at the tender and impressionable age of thirteen, she endured the disfigurement caused by Dr. Lieeiardi’s failure to meet the standard of care shocks the conscience. See Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
Following Dr. Licciardi’s botched treatment of her broken arm, with a scarred, discolored and misshapen arm, this thirteen year old girl embarked on her career in junior high school. This milestone is a momentous and anxiety-attended event for any child, made worse for Amanda as a result of the medical malpractice proved at trial. Amanda testified without contradiction that her schoolmates referred to her arm as a “chicken wing.” Dr. Stewart Phillips testified that young girls are less forgiving than their male counterparts about a companion who looks different, and that a crooked arm would be “very, very upsetting.” Following Dr. Haddad’s second surgery, to remove the plate and pin he had inserted in the first remedial surgery, Amanda was left with two long, discolored scars, running along |3the top and the bottom of her arm. Marsha Redler and David Dixon testified that the scars were ugly and caused Amanda emotional discomfort. During her school years, Amanda could not enjoy the camaraderie and development of physical and emotional skills offered by participation in school sports such as volleyball and bowling. Her mother is an active sportswoman, and because of Dr. Licciardi’s malpractice, mother and daughter are unable to share this avocation.
There was testimony concerning the possibility of subsequent scar revision surgery, which would cost $5,000 and which would be *1223 difficult, surgery with a low likelihood of visual improvement. Dr. Haddad testified by deposition to a permanent partial disability of 25%, and it is clear that Amanda will never have complete use of her arm and hand. Amanda’s mother testified that her daughter’s arm would give way whenever she attempted to help with heavy work such as vacuuming or sweeping. She has difficulty handling heavy pots and pans. As a young housewife and mother, Amanda will continue to suffer emotionally and economically from this impairment. She continues to suffer pain during changes in the weather, and on cold or rainy days.
An award of less than $50,000 in general damages does not bear a reasonable relationship to the elements of the damages and to the over $15,000 out of pocket medical expenses incurred by the plaintiff. I must conclude from the entirety of the evidence viewed in the light most favorable to Dr. Liceiardi, that a rational trier of fact could not have fixed the awards of general damages at the level set by the jury and that this is one of those “exceptional eases where such awards are so gross as to be contrary to right reason.” Bartholomew v. CNG Producing Co., 832 F.2d 326 (CA-5, 1987), quoted in Youn v. Maritime Overseas Corp., 623 So.2d at 1261.
|4I find the authorities cited by plaintiff counsel to be persuasive. Having found that the award for Amanda’s particular injuries and their effects on her under the particular circumstances is a clear abuse of the “much discretion” of the trier of fact,[1] I have reviewed prior awards for the purpose of determining the lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). This review indicates that the lowest appropriate award would be $95,000 in general damages, in addition to the $15,000 in medical expenses. See Weber v. Buccolaa-McKenzie, Inc., 541 So.2d 315 (La.App. 5 Cir.1989), involving only one surgery and one-third the medical expenses, painful physical therapy for several months, and depression, and awarding $75,000 in general damages to a 61 year old woman; Newman v. Ellis, 572 So.2d 170 (La.App. 1 Cir.1990), involving fewer surgeries and 5% less permanent disability, five to six weeks of physical therapy, loss of hobbies, $10,000 higher medical expenses, and awarding $75,000 in general damages to a 62 year old male carpenter; Daugherty v. Cross Marine, Inc., 598 So.2d 595 (La.App. 4 Cir.1992), involving three surgeries, including a bone graft, moderate pain and 10% disability to the arm, and awarding $90,000 to a Jones Act seaman; Roger v. Cancienne, 538 So.2d 670 (La.App. 4 Cir.1989), writ denied, 542 So.2d 1382 (La.1989) involving arthroscopic surgery on a twelve year old male Little League baseball player, severe impairment of arm movement and physical activity, a difficult post-operative period, loss of the ability to play baseball, incipient arthritis, a 15% permanent disability, one-third the medical expenses, and awarding $125,000. Neither Weber, Newman nor Daugherty involved the emotional impact or long-term potential present in the instant ease.
IsFor the foregoing reasons, I would affirm the judgment of the trial court finding liability, but would increase the award of general damages from less than $50,000 to $95,000.

. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).