692 So.2d 1213 (1997)
Raymond COOPER
v.
DIAMOND OFFSHORE DRILLING, INC.
No. 96-CA-924.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 1997.
*1214 Lawrence D. Weidemann, John H. Denenea, Jr., New Orleans, for Plaintiff-Appellee.
H.D. McNamara, Jr., Metairie, for Defendant-Appellant.
Before BOWES, DUFRESNE and GOTHARD, JJ.
DUFRESNE, Judge.
This is an appeal by Diamond Offshore Drilling, Inc. defendant-appellant, from a $595,421.37 judgment in favor of Raymond Cooper, a seaman injured by an unseaworthy condition aboard one of defendant's vessels. Cooper allegedly slipped on grease on a pipe on which he was standing while replacing the cover of a piece of equipment. He suffered back and neck injuries, has undergone a lumbar fusion, and may need a cervical fusion as well. He has a 22% total bodily disability rating, and because of his limited education is basically unemployable.
The above award included $185,000.00 in general damages, $365,000.00 for future economic loss, and the remainder for medical expenses. These amounts were amply supported by the evidence, and Diamond does not suggest otherwise here. Neither does it assert that Cooper was not a seaman permanently attached to the vessel, or that no accident occurred. What it does urge is that plaintiff simply failed to prove that an unseaworthy condition existing on the vessel caused the accident, and that the trial judge's findings to the contrary were error. We disagree, and therefore affirm the judgment.
The law applicable to Jones Act negligence and general maritime law unseaworthiness claims is well summarized in Spangler v. North Star Drilling Co., 552 So.2d 673 (La.App. 2nd Cir.1989), and need not be repeated in full. It is sufficient to note here that to prevail on an unseaworthiness claim, a seaman need not show negligence, as is necessary in a Jones Act claim, but rather only that the vessel had some defect which rendered it unseaworthy and that this defect caused his injury. A slippery condition on a vessel can constitute an unseaworthy condition and form the basis of liability, Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Daugherty v. Cross Marine, Inc., 598 So.2d 595 (La.App. 4th Cir.1992). Further, because a determination of unseaworthiness is a factual question, the standard of review on appeal is that of manifest error, Spangler, supra.
Two basic versions of the events leading up to plaintiff's injury were presented at trial. Plaintiff, in his sixth month of offshore employment, testified that he was working with a seventeen year veteran deck hand, Steve Benson, and that the two of them were greasing a piece of equipment. He explained that to reach what he referred to as the *1215 "chain," a cover had to be removed from the machine. Once the "chain" was exposed, he said that Benson used a small mop and grease bucket to apply the grease, and apparently dropped some of the excess onto a pipe running underneath the apparatus. While re-installing the cover, plaintiff got up on the pipe, and when he turned to get down his foot went out from under him and he fell to the deck hitting his head and back. While waiting to be transported by helicopter to the hospital he told Herbert Pretus, the safety representative and medic, that his foot had slipped on the pipe, and this was written up in the initial accident report.
The second version, which was actually a composite of several witnesses' testimony, was as follows. Prior to Benson and plaintiff being assigned to work on the machine, another mechanic aboard, a Mr. Breedlove, had removed the cover, changed the underlying gears and greased them. Benson testified that when he and plaintiff got there the only thing they had to do was replace the cover. He said that plaintiff was on the other side of the apparatus from him, but that he did not see him get up on the pipe, which was about knee high. He stated that at some point he looked up and plaintiff had disappeared. When he came around the machine, he saw plaintiff lying on his back on the deck. While Benson testified that he did not grease the machine and saw no grease bucket at the scene, he also said that if he had done the job of replacing the gears, he would have applied the grease from a grease bucket either with a mop or by hand, and in the process would probably have dropped some excess on the deck. He did not see any grease on either the pipe or the deck after the accident.
Joey Abrigo, the driller on the rig, testified that he had assigned Benson and plaintiff to replace the cover at noon when the shifts changed. At about 3:00 P.M. he checked on them to see how the job was going. He said that he was on Benson's side of the machine and did not actually see plaintiff, but when Benson noticed that he had disappeared, he went to the other side and discovered plaintiff on the deck. Abrigo testified that he saw no grease on the floor or the pipe. It was his opinion that newly installed gears would not have been greased by hand or with a mop, but admitted that a deck hand, rather than himself, would do such a chore. He also admitted that if excess grease were to fall on a pipe and simply be wiped off, then the pipe would still be slippery.
Herbert Pretus, the safety representative, wrote up the original accident report which showed that plaintiff stated at the scene that his foot had slipped from the pipe as he was getting down from it. Pretus said grease was not mentioned at that time, and that he saw no grease bucket or grease on the floor or pipe. He also said that he pushed against the soles of plaintiff's shoes to check his leg muscles and reflexes, and noticed no grease there either. His further testimony was that aside from the original accident report, the accident was also written up in his "pipe book," a kind of personal log, in notes of the follow-up safety meeting in the driller's book, kept by Abrigo, and in a weekly report which would eventually be sent to the main office. He said that his pipe book was either lost or thrown away, but that he had no idea what had happened to the other two documents. In this same regard, Abrigo testified variously in deposition and at trial about his writing up the post-accident safety meeting in his driller's book, and did not know in any case what had happened to that book. Richard Holley, the rig supervision also said that the driller's book would have notes of the safety meeting, but had no idea where that book might be. None of these documents were produced in response to plaintiff's discovery request.
Two other deck hands, Gregory Shows and Joseph Lejeune, testified that neither saw any grease on the floor or the pipe. Shows also said that he had greased the machine once using the grease fittings, and that he did not think anyone could grease it with a mop. It is clear, however, that he was referring to ordinary lubrication rather than that of newly installed gears. Lejeune said that he saw no grease, but admitted that he did not run his hand along the pipe to see if it was slippery. The mechanic Breedlove was not called as a witness.
*1216 On the above evidence, the trial judge found that the vessel was unseaworthy and ruled in plaintiff's favor. In his reasons for judgment, he stated pertinently:
Negligence is not a component of the vessel owner's responsibility to provide a seaworthy vessel to his employee/seaman and, accordingly, proof of an unseaworthy condition which proximately causes the accident is, without proof of negligence, sufficient to enable the seaman to recover.
.... .
This Court finds that the plaintiff, a seaman employed as a roughneck on the Ocean Endeavor, has met his burden of proof that he was injured due to the unseaworthiness of said vessel. This Court finds the plaintiff's testimony regarding the circumstances of the accident to be most credible. This Court also found the testimony of Joey Abrigo lacking in credibility concerning the question of grease at the scene of plaintiff's fall. Moreover, the defendant's failure to produce the driller's log, the pipe book, and the weekly safety meeting record relative to this accident allows this Court to raise the presumption that this evidence would have been adverse to defendant's case. This also holds true as to the failure of the defendant to call Mr. Breedlove who had material evidence regarding the site of the accident.
Based on these findings, judgment was entered in plaintiff's favor, and defendant now appeals.
The defendant acknowledges that generally where factual issues are involved, the standard of appellate review is whether factual findings are manifestly erroneous, citing Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216. It further correctly points out that when a judgment is based in part on prejudicial errors of law, the reviewing court must conduct a de novo review of the evidence without reference to the manifest error rule, citing Lasha v. Olin Corp., 625 So.2d 1002 (La.1993). It urges here that under either analysis, the judgment of the district court should be reversed. It also urges that if indeed it is found liable, then plaintiff's recovery should be reduced due to his comparative fault in bringing about the injury.
As to manifest error, defendant notes a number of discrepancies in plaintiff's version of events, and asserts that when considered with all other evidence presented, he simply failed to prove that more probably than not there was grease on the pipe. We conclude otherwise. While it is true that plaintiff's version that he was working with Benson to grease the "chains" was contradicted by Benson, who said they were only replacing the cover, and testimony of other witnesses, who noted that there were no "chains," but rather gears, in the apparatus, those details are not dispositive of the case. The crucial factual issue was whether there was in fact grease on the pipe. It was not disputed by any defense witness that Breedlove had changed worn gears in the machine on the day of the accident and had greased these new parts. Although Abrigo said that the grease would not be applied by mop or hand, he also said that the floor hands would do this chore. Benson, a deckhand, testified that if he indeed were to apply grease to new gears he would do it with a mop or by hand, and might drop some of the excess.
Essentially, then, it is known that the new gears were greased on installation, Benson said that excess grease could well fall during this process, and plaintiff said that his foot slipped out from under him because of grease as he was getting down from the pipe. When this circumstantial evidence, i.e. grease being used in a manner which might well lead to the excess falling on the pipe or floor at the exact spot where the accident occurred, is added to the determination that plaintiff's testimony was "most credible," then the ultimate finding that more probably than not grease was on the pipe was clearly a reasonable one.
Admittedly, defense witnesses denied seeing any grease at the scene, but Abrigo was specifically found not credible, and the other witnesses' testimony on this point was implicitly rejected as well. These findings are also intertwined with defendant's argument that the trial judge fell into legal error regarding adverse inferences. *1217 The first such inference concerned the three written reports made after the accident, none of which were produced in response to discovery. The rule as to the unexplained failure to present evidence known to have been in possession of a party is that an inference may be made that that evidence was unfavorable to that party, Salone v. Jefferson Parish Dept. Of Water, 94-212 (La.App. 5th Cir. 10/12/94), 645 So.2d 747. In the present case, there was ample testimony, albeit contradictory and often confused, both in depositions and at trial, to establish that the three reports existed at one time, and there is no question that they were never produced. While it may well be that the "pipe book" kept by Pretus was thrown away or lost, there was no real explanation as to what happened to the driller's book or the weekly safety report. In this circumstance, the adverse inference regarding the reports was properly applied.
The second adverse inference drawn by the trial judge, that concerning the failure of defendant to call the mechanic Breedlove as a witness is more problematical. The general rule as to unproduced witnesses is that where a party having control of an available material witness fails to call that witness, an inference may be drawn that that testimony would have been adverse to the party. That inference should not be made, however, where the witness is equally available to both parties, Augustus v. St. Mary Parish School Bd., 95-2498 (La.App. 1st Cir. 6/28/96), 676 So.2d 1144. Here, there was no showing that Breedlove was not available to both parties, and therefore the adverse inference should not have been made. However, that does not end the inquiry. As noted above, legal errors may trigger a de novo review of the facts, but that occurs only where the alleged errors are prejudicial, Lasha v. Olin Corp, supra. Considering the entire record of the case, it is evident that once the trial judge found plaintiff credible, and rejected the testimony of Abrigo and other defense witnesses, on the issue of grease at the accident scene, the case was basically resolved. Thus, even though the adverse inference regarding Breedlove should not have been made, we do not find that error sufficiently prejudicial to defendant's right to a fair adjudication so as to require this court to undertake a de novo review of the evidence.
A third alleged legal error urged by defendant relates to a discussion by the trial judge in his reasons for judgment of the burden of proof in Jones Act cases. In stating that a seaman need not prove negligence by a preponderance of the evidence, the judge clearly mis-spoke. However, that statement is dicta because resolution of this matter involved the general maritime law unseaworthiness claim, not the Jones Act claim. No such error appeared in the judge's discussion of the unseaworthiness doctrine, and therefore what he said about proving negligence in the Jones Act context is of no consequence.
The final issue here is whether plaintiff should have been found comparatively negligent in bringing about his own injuries. Almost every defense witness was asked by plaintiff's counsel if they knew of anything that plaintiff had done wrong in performing his task, and all of them said no. On this showing, there was simply no proof that plaintiff, a seaman, had been negligent in this accident. We therefore agree with the trial judge's implicit determination that plaintiff was not comparatively at fault.
For the above reasons, we hereby affirm the judgment of the trial court.
AFFIRMED.